IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 23-cv-02688-PAB

LAFLAME ENTERPRISES, INC.,

    Plaintiff,

v.

JOHN DOES 1-100,
JANE DOES 1-100, and
XYZ COMPANY,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on Plaintiff's Ex Parte Application for: a Temporary Restraining Order; a Seizure Order; and an Order to Show Cause Regarding Why a Preliminary Injunction and Seizure Order Should Not Issue [Docket No. 4]. The Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

## I.    BACKGROUND[1]

Plaintiff LaFlame Enterprises, Inc. ("LaFlame") is a Delaware corporation that is engaged in the manufacture, distribution, and sale of various types of merchandise at concerts. Docket No. 1 at 1-2, ¶¶ 2, 6. Travis Scott ("Travis Scott" or the "Artist") is a musical artist who owns the federally registered trademark "TRAVIS SCOTT." *Id*. at 2-3, ¶¶ 7-8. Travis Scott granted LaFlame the exclusive right to use all federally registered trademarks, service marks, likenesses, logos, and other indicia of the Artist in

---

[1] The following facts are taken from plaintiff's complaint, the declaration of Anna Rozhko, and the declaration of Cara Burns. *See* Docket Nos. 1, 9, 10.

connection with tour merchandise sold and offered for sale during the Artist's current tour ("Authorized Tour Merchandise").  *Id*. at 3, ¶ 9; *see also* Docket No. 9 at 2, ¶ 3.  Annually, LaFlame and Travis Scott earn substantial income from the sale of the Authorized Tour Merchandise bearing the Artist's trademarks.  Docket No. 1 at 4, ¶ 12.  LaFlame sells the Authorized Tour Merchandise bearing the Artist's trademarks at booths located inside and sometimes outside each venue.  Docket No. 9 at 3, ¶ 4.  Travis Scott is currently on tour in various locations throughout the United States and Canada until December 26, 2023.  Docket No. 9-1 at 2.  Travis Scott will perform at Ball Arena in Denver, Colorado on Sunday, October 22, 2023.  Docket No. 1 at 4, ¶ 13; Docket No. 9 at 1, ¶ 1.

Defendants, various Doe individuals and a Doe company, sell and distribute unauthorized T-shirts, jerseys, caps, and other merchandise bearing the Artist's trademarks (the "Bootleg Merchandise") in the vicinity of Travis Scott's concerts.  Docket No. 1 at 2, 4, ¶¶ 3-4, 14.  The Bootleg Merchandise is not authorized by the Artist or LaFlame.  *Id*. at 4, ¶ 15.  Anna Rozhko, a product manager for LaFlame, states that the sale of the Bootleg Merchandise typically occurs outside the concert venues.  Docket No. 9 at 2, 6, ¶¶ 2, 13.  The Bootleg Merchandise is similar to that sold by LaFlame, except the Bootleg Merchandise is of an inferior quality.  *Id*. at 7, ¶ 16.  Ms. Rozhko states that the fans are often confused as to the source of the Bootleg Merchandise and therefore blame the performer for the poor quality.  *Id*.  The Bootleg Merchandise harms LaFlame's and the Artist's reputations.  *Id*. at 7-8, ¶ 17.  The Bootleg Merchandise sells for approximately half of the price of LaFlame's Authorized Tour Merchandise.  *Id*. at 8, ¶ 18.

2

LaFlame submitted several exhibits, Docket No. 9-3 and Docket No. 9-4, containing photographs of the Bootleg Merchandise and photographs of various defendants selling the Bootleg Merchandise at the Artist's concerts in Charlotte, North Carolina on October 11, 2023 and Raleigh, North Carolina on October 13, 2023. *See* Docket No. 9 at 5, ¶ 11. Ms. Rozhko personally attended both concerts in North Carolina. *Id*. Ms. Rozhko states that she has observed that the Bootleg Merchandise sold on this tour has "a few similar designs." *Id*. at 6, ¶ 12.

LaFlame filed this case on October 16, 2023. Docket No. 1. LaFlame asserts two causes of action: (1) a violation of 15 U.S.C. § 1114 for unauthorized use of the registered trademark; and (2) a violation of 15 U.S.C. § 1125(a) for false designation of origin. *Id*. at 5-6. LaFlame seeks a nationwide preliminary injunction and permanent injunction enjoining defendants from manufacturing, distributing, selling, and offering for sale unauthorized merchandise bearing the Artist's trademarks, service marks, likenesses, logos, and other indicia. *Id*. at 6. LaFlame also requests that the Court issue an order permitting law enforcement officers and authorized agents of plaintiff to seize any Bootleg Merchandise that defendants attempt to sell near the Artist's concerts on this tour. *Id*.

On October 16, 2023, LaFlame filed a motion for an ex parte temporary restraining order ("TRO") and a seizure order. Docket No. 4. LaFlame seeks a TRO temporarily enjoining defendants from manufacturing, distributing, and selling unauthorized merchandise bearing the Artist's trademarks. Docket No. 4-1 at 3. LaFlame also seeks a nationwide seizure order pursuant to 15 U.S.C. § 1116(d), authorizing law enforcement to seize Bootleg Merchandise found during the Artist's tour,

from four hours before to four hours after any performance on the tour and within a four-mile vicinity of the concert arenas, including but not limited to the October 22, 2023 concert at Ball Arena. *Id*. at 3-4. LaFlame requests that the Court order defendants to show cause why a preliminary injunction and seizure order should not issue. *Id*. at 2-3.

Plaintiff's attorney Cara Burns filed a declaration in support of the TRO motion and seizure order. Docket No. 10. Ms. Burns, who has obtained seizure orders in numerous cases, states that, in her experience, defendants typically do not appear in judicial proceedings. *Id*. at 8, ¶ 7. Ms. Burns states that, based upon her knowledge in prior cases for similarly-situated performers, defendants will likely transfer, hide, or destroy any Bootleg Merchandise if the merchandise is not immediately subject to an ex parte seizure order. *Id*., ¶ 8. Ms. Burns affirms that LaFlame has not publicized the requested seizure. *Id.* at 13, ¶ 20.

The Court held a hearing on the motion for a TRO and seizure order on October 19, 2023. Counsel for plaintiff appeared. No defendants appeared, which is not surprising given that the motion was ex parte and the defendants are unnamed.

II. **LEGAL STANDARD**

    A. <u>**Temporary Restraining Order**</u>

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir.

4

2010).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).  Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule."  *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).  The same considerations apply to the issuance of a temporary restraining order.  *See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

### B. Seizure Order under 15 U.S.C. § 1116(d)

Section 1116(d) authorizes a district court to grant an ex parte order to seize goods when a defendant uses a counterfeit mark in connection with the sale, offering for sale, or distribution of goods.  15 U.S.C. § 1116(d)(1)(A).  A court "may" issue a seizure order only if the following criteria are met:

> (A) the person obtaining an order under this subsection provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection; and
>
> (B) the court finds that it clearly appears from specific facts that--
> (i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;
> (ii) the applicant has not publicized the requested seizure;
> (iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
> (iv) an immediate and irreparable injury will occur if such seizure is not ordered;
> (v) the matter to be seized will be located at the place identified in the application;

> (vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
> (vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

15 U.S.C. § 1116(d)(4); *see also Merch Traffic, LLC v. Does 1-100*, 2023 WL 5286948, at *1-3 (D.N.J. Aug. 4, 2023).[2]  Unless waived by all parties, the Court shall hold a hearing, no sooner than ten days and no later than fifteen days after issuance of the order.  15 U.S.C. § 1116(d)(10)(A).  "At such hearing the party obtaining the order shall have the burden to prove that the facts supporting findings of fact and conclusions of law necessary to support such order are still in effect.  If that party fails to meet that burden, the seizure order shall be dissolved or modified appropriately."  *Id*.

### III. ANALYSIS

Based upon the complaint, the TRO motion and brief, the declarations of Ms. Rozhko and Ms. Burns, and the hearing on the TRO motion, the Court makes the following findings.

The Court finds that LaFlame has demonstrated each of the factors necessary to obtain a temporary restraining order.  *See RoDa Drilling Co*., 552 F.3d at 1208.  Regarding the first factor, LaFlame has shown a likelihood of success on the merits of its infringement claims under 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114.  The elements of an infringement claim under § 1125(a) are (1) "that the plaintiff has a protectable

---

[2] Any seizure order under Section 1116(d) shall set forth: "a particular description of the matter to be seized, and a description of each place at which such matter is to be seized;" "the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made;" "the amount of security required to be provided under this subsection;" and "a date for the hearing required under paragraph (10) of this subsection."  15 U.S.C. § 1116(d)(5)(B)-(E).

interest in the mark;" (2) "that the defendant has used 'an identical or similar mark' in commerce;" and (3) "that the defendant's use is likely to confuse consumers." *1-800 Contacts, Inc. v. Lens.com*, Inc., 722 F.3d 1229, 1238 (10th Cir. 2013) (citations omitted).³  The elements for a claim under § 1114 are the same as the elements for a claim under § 1125(a). *Derma Pen, LLC v. 4EverYoung Ltd.*, 773 F.3d 1117, 1120 (10th Cir. 2014).  LaFlame has the exclusive right to use Travis Scott's trademarks. Docket No. 1 at 3, ¶ 9.  LaFlame has submitted evidence suggesting that defendants have sold merchandise bearing the Artist's trademarks near his concerts on this tour. Docket Nos. 9-3, 9-4; *see also* Docket No. 9 at 5-6, ¶¶ 11-12.  Ms. Rozhko states that fans are often confused as to the source of the Bootleg Merchandise.  Docket No. 9 at 7, ¶ 16.  The Bootleg Merchandise is similar to that sold by LaFlame, except the Bootleg Merchandise is of an inferior quality. *Id*.  Accordingly, LaFlame has demonstrated a likelihood of success on the merits for its infringement claims.

Regarding the second factor, the Court finds that LaFlame will suffer irreparable harm in the absence of preliminary relief.  Under the 2020 Trademark Modernization Act, a plaintiff seeking a temporary restraining order on the basis of trademark infringement "shall be entitled to a rebuttable presumption of irreparable harm upon . . . a finding of likelihood of success on the merits."  15 U.S.C. § 1116(a).  Moreover,

---

³ The Tenth Circuit has identified the following factors as relevant to whether a likelihood of confusion exists: "(a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks."  *1-800 Contacts*, 722 F.3d at 1239 (quoting *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089–90 (10th Cir. 1999)).

LaFlame specifically argues that it will suffer a loss of goodwill due to the sales of the inferior quality merchandise. Docket No. 5 at 8. The sale of counterfeit goods can "diminish the [authentic] brand in ways that [the brand] will find difficult to correct." *Bikinvention 2 CC v. Squirt, LLC*, No. 14-cv-01178-CMA-MEH, 2014 WL 1758142, at *3 (D. Colo. May 2, 2014) (finding that failure to issue a TRO against a counterfeiter selling goods of inferior quality would cause irreparable harm to plaintiff's goodwill). As a result, LaFlame has satisfied the second element for issuance of a TRO.

Finally, the Court finds that the third and fourth factors weigh in favor of granting a temporary restraining order. A defendant "faces no hardship in refraining from willful trademark infringement." *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). The "public has an interest in avoiding the customer confusion that can result from trademark infringement." *Rylee & Cru, Inc. v. Zhu*, No. 23-cv-00120-PAB, 2023 WL 355945, at *4 (D. Colo. Jan. 23, 2023) (citing *Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, 2011 WL 221651, *13 (E.D. Cal. Jan. 24, 2011) ("In the trademark context, the public interest is usually the right of the public not to be deceived or confused") (citing *Internet Specialties West, Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993-94 (9th Cir. 2009))). As a result, LaFlame has demonstrated each of the factors necessary to obtain a temporary restraining order. *See RoDa Drilling Co.*, 552 F.3d at 1208.

Furthermore, LaFlame has met the standard for an ex parte seizure order under 15 U.S.C. § 1116(d). The Court will order LaFlame to provide adequate security. *See* 15 U.S.C. § 1116(d)(4)(A). The Court finds that the factors under 15 U.S.C. § 1116(d)(4)(B)(i)-(vii) are satisfied. First, an order other than an ex parte seizure order

is not adequate to achieve the purposes of section 1114 because LaFlame "has no other legal remedy that would prevent unauthorized sales without allowing bootleggers to conceal infringing goods and sell them later." *See Merch Traffic, LLC v. Various John Does*, 21-cv-00576-BJB-CHL, Docket No. 12 at 2 (W.D. Ky. Sept. 23, 2021).  Ms. Burns states that, in her experience, defendants in these cases do not appear in judicial proceedings.  Docket No. 10 at 8, ¶ 7.  Ms. Burns states that, based upon her knowledge in prior cases, defendants will transfer, hide, or destroy any Bootleg Merchandise if the merchandise is not immediately subject to an ex parte seizure order. *Id*., ¶ 8.  Second, LaFlame has not publicized the requested seizure.  *See id*. at 13, ¶ 20.  Third, LaFlame is likely to succeed in showing that defendants used a counterfeit mark in connection with the sale of goods because LaFlame possesses the exclusive right to use the TRAVIS SCOTT trademark that defendants will likely use to sell unauthorized merchandise at the Ball Arena concert in Denver, Colorado.  *See* Docket No. 1 at 3, ¶ 9; Docket No. 9 at 5-7, ¶¶ 11-14.

Fourth, LaFlame will suffer an immediate and irreparable injury if a seizure is not ordered because the unauthorized sales of Bootleg Merchandise will likely cause customer confusion and harm plaintiff's reputation.  Fifth, the merchandise to be seized will be located in a one-mile vicinity of Ball Arena.  Sixth, the harm to LaFlame outweighs the harm to defendants because "the bootleggers have no right to sell infringing merchandi[s]e, which they could move to another location and offer for sale again if not confiscated, and because any inadvertent seizure of merchandise that is not infringing may be remedied in a subsequent hearing in this case." *Merch Traffic, LLC*, 21-cv-00576-BJB-CHL, Docket No. 12 at 2; *see also Merch Traffic, LLC*, 2023 WL

9

5286948, at *3 (finding that the harm to plaintiff outweighed the harm to defendants because plaintiff faced financial losses and defendants had no legitimate interest in selling infringing merchandise).  Seventh, the declarations of Ms. Burns and Ms. Rozhko state that, in their experience, defendants would likely transfer, hide, dispose of, or destroy any Bootleg Merchandise, *see* Docket No. 10 at 8, ¶ 8; Docket No. 9 at 8, ¶ 18, thereby making such evidence inaccessible to the Court.

Accordingly, because LaFlame has met the standard under 15 U.S.C. § 1116(d)(4), the Court will issue a seizure order.  However, the seizure order will be limited to the October 22, 2023 concert at Ball Arena in Denver, Colorado.  The Court rejects LaFlame's request for a nationwide seizure order.  LaFlame has not sufficiently established that the Court has personal jurisdiction over defendants in other states to support the issuance of a nationwide seizure order.  The "Lanham Act provides for nationwide *service*, not jurisdiction."  *Merch Traffic, LLC v. Does*, 620 F. Supp. 3d 644, 652-53 (W.D. Ky. 2022) (discussing how the Court would have jurisdiction over bootleggers served at the Louisville concerts, but would not have jurisdiction over bootleggers in other jurisdictions); *see also Bravado Int'l Grp. Merch. Servs., Inc. v. Smith*, 2012 WL 1155858, at *4 (M.D. Fla. Mar. 27, 2012) (collecting cases discussing personal jurisdiction problems with nationwide seizure orders and injunctions); *Brockum Co., a Div. of Krimson Corp. v. Various John Does*, 685 F. Supp. 476, 477-78 (E.D. Pa. 1988) (granting TRO for a concert within the court's jurisdiction, but denying nationwide preliminary injunction due to personal jurisdiction and enforceability problems).  Furthermore, the time period for conducting the seizure "shall end not later than seven days after the date on which such order is issued."  15 U.S.C. § 1116(d)(5)(C); *see also*

*Bravado Int'l Grp. Merch. Servs., Inc. v. Does 1-100*, 2019 WL 3425990, at *7 (E.D. Cal. July 30, 2019) (noting that, even if plaintiff met the requirements of § 1116(d), any seizure order is limited to seven days pursuant to 15 U.S.C. § 1116(d)(5)(C), which is "a fraction of the duration requested by plaintiff" in its request for a nationwide seizure order).

## IV. CONCLUSION

Based on these findings, it is

**ORDERED** that Plaintiff's Ex Parte Application for: a Temporary Restraining Order; a Seizure Order; and an Order to Show Cause Regarding Why a Preliminary Injunction and Seizure Order Should Not Issue [Docket No. 4] is **GRANTED IN PART**. It is further

**ORDERED** that defendants, John Does 1-100, Jane Does 1-100, and XYZ Company, the unauthorized sellers of any clothing, jewelry, photographs, posters, and other merchandise (collectively the "Infringing Merchandise"), bearing the federally registered trademarks, service marks, likenesses, logos or other indicia of the Artist known as "TRAVIS SCOTT" (collectively, the "Artist's Trademarks"), are temporarily restrained from manufacturing, distributing, selling or holding for sale, any Infringing Merchandise bearing the Artist's Trademarks.  It is further

**ORDERED** that this temporary restraining order shall expire on **November 2, 2023** at 5:00 p.m. Mountain Time.  It is further

**ORDERED** that the United States Marshal for this District, the state police, local police, or local deputy sheriffs are authorized to seize and impound any and all Infringing Merchandise bearing any or all of the Artist's Trademarks which defendants

attempt to sell or are holding for sale, including any from any carton, container, vehicle, or other means of carriage in which the Infringing Merchandise is found from four hours before to four hours after the October 22, 2023 Travis Scott concert within a one mile vicinity of the Ball Arena in Denver, Colorado.  It is further

**ORDERED** that plaintiff and defendants shall appear before Philip A. Brimmer, Chief United States District Judge, in Courtroom A701 of the United States District Court for the District of Colorado, located at 901 19th Street, Denver, Colorado, 80294 at **2:30 p.m. on Monday, October 30, 2023** for a hearing pursuant to 15 U.S.C. § 1116(d)(10)(A).  It is further

**ORDERED** that this order is hereby conditioned upon plaintiff filing with the Clerk of this Court an undertaking in the form of a bond, certified check, bank check, or cash in the amount of $500.00 no later than **October 20, 2023** at 5:00 p.m. Mountain Time, to secure the payment of such costs and damages not to exceed such sum as may be suffered or sustained by any party who is found to be wrongfully restrained hereby.  It is further

**ORDERED** that this order is conditioned upon plaintiff advancing to law enforcement officers such sum as is required by the same to cover the fees for their said services, in the event plaintiff seeks their services.  It is further

**ORDERED** that service of a copy of this order, together with the complaint, be made upon the defendants by the United States Marshal, state or local police, local deputy sheriffs, or by any person over the age of eighteen years not a party to this action selected for that purpose by plaintiff, at the time of the seizure provided herein is effected and that such service shall be deemed good and sufficient.  It is further

**ORDERED** that the process server shall offer a receipt to each person from whom Infringing Merchandise is seized and that plaintiff shall be deemed substitute custodian for all Infringing Merchandise seized.  It is further

**ORDERED** that plaintiff shall file a declaration on or before **October 26, 2023** detailing all Infringing Merchandise seized at the October 22, 2023 Travis Scott concert at Ball Arena.  It is further

**ORDERED** that any defendant who is served with a copy of this order who objects to the provisions hereof may submit his or her objections to this Court or otherwise move for relief from this Court according to the Federal Rules of Civil Procedure, including that pursuant to Fed. R. Civ. P. 65(b)(4), any defendant can apply to this Court to modify or dissolve this order on two days' notice or shorter notice as this Court may allow, but no such application shall serve to suspend this Order or to stay its terms unless otherwise ordered by this Court.

DATED October 19, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge